IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANTONIO L. JOHNSON, | ) | |
| Petitioner, | ) ) | NO. 3:19-cv-00704 |
| v. | ) ) | JUDGE RICHARDSON |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |

## **MEMORANUM OPINION**

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence (Doc. No. 1, "Petition"), filed by Petitioner, Antonio L. Johnson. Via the Petition, he seeks to overturn his conviction and 151-month total sentence imposed by this Court (but not the undersigned) in case number 3:16-cr-242-1 ("underlying case") after his plea of guilty to each count of an eight-count Indictment filed against him.

PROCEDURAL BACKGROUND

Via an Indictment filed in December 2016, Petitioner was charged with eight alleged violations of 21 U.S.C. § 841(a)(1): five counts of distribution and possession with intent to distribute cocaine (Counts One, Two, Four, Five, and Seven); one count of distribution and possession with intent to distribute cocaine and heroin (Count Three); one count of distribution and possession with intent to distribute heroin (Count Six); and one count of possession with intent to distribute cocaine and heroin (Count Eight). (R. 14).[1] The Government did not seek to enhance the statutory maximum sentence (based on either any prior convictions or the quantity of controlled substance(s) involved), and thus Petitioner's maximum possible term of incarceration for each count was 20 years. (R. 14-1; R. 34 at 2).

---

[1] References herein to "R." are to the docket numbers in the underlying case, No. 3:16-cr-242-1, over which the undersigned did not preside at any point.

1

In April 2017, Petitioner pled guilty to all eight counts pursuant to a plea agreement with the Government. (R. 33-34). As the Court established at the plea hearing, Petitioner had read the plea agreement, had reviewed it with his then-counsel, and had no questions about it. (R. 52 at 8, 11). In the plea agreement (R. 34), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agreed to jointly recommend a sentence of 151 months' incarceration and a three-year term of supervised release, with the understanding that if the Court ultimately "refuse[d] to impose the agreed term of incarceration and supervised release, thereby rejecting the Plea Agreement, or otherwise refuses to accept [Petitioner]'s plea of guilty, either party shall have the right to withdraw from this Plea Agreement." (R. 34 at 11).

The plea agreement left no doubt as to exactly where the figure of 151 months came from. As the Government accurately explains it:

> That agreed 151-month sentence represented the bottom of the guidelines range that the parties anticipated would apply. As the plea agreement noted, "Pursuant to U.S.S.G. § 4B1.1, [Petitioner] qualifie[d] as a Career Offender," and would therefore have a total offense level (after acceptance of responsibility) of 29 and a Criminal History Category of VI, "result[ing] in a recommended advisory range of 151-188 months of imprisonment."

(Doc. No. 12 at 3). The Government also accurately explains the material aspects of the sentencing procedure and Petitioner's subsequent appeal:

> In preparation for sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"), which found that [Petitioner] indeed qualified as a career offender with a guidelines range of 151-188 months. The PSR identified three prior convictions that qualified as career-offender predicates, including a 2009 Tennessee conviction for possession of cocaine for resale, and two 2005 Tennessee convictions involving possessing less than .5 grams of cocaine for resale. Because [Petitioner] was sentenced for two 2005 convictions on the same day, the PSR assigned criminal history points to only one of them—which, as a result, became the de facto career-offender predicate—while noting that either one would qualify. Despite agreeing in the plea agreement that [Petitioner] qualified as a career offender, defense counsel objected to the PSR's finding that [Petitioner] was a career offender. In his objection to the PSR, [Petitioner] argued that the 2005 conviction that formally counted as a career-offender predicate should not actually qualify, because the plea colloquy in that case set forth a statement of facts that was more consistent with a simple possession offense than a "controlled substance offense," as defined by the guidelines. He further argued that although the other 2005 conviction did qualify as a "controlled substance offense," it should not be counted as a career-offender predicate under the rule of lenity. In response, the Probation Office attached the relevant Shepard documents and explained that both

2

2005 convictions qualified as predicates. The Probation Office further explained that even if [Petitioner] were correct in his challenge to the first 2005 conviction, there would be no basis to exclude consideration of the second conviction.

At sentencing, defense counsel reiterated this objection to the PSR and noted that if the district court agreed that [Petitioner] did not qualify as a career offender, then [Petitioner] would like to withdraw from the plea agreement and re-enter an open guilty plea. After considering the parties' arguments and the relevant materials attached to the PSR, the Court overruled [Petitioner's] objection and denied his request to withdraw his guilty plea. The Court then imposed a sentence of 151-months incarceration concurrent with each of the eight counts, a term of supervised release of three years, and a special assessment of $800 consistent with the plea agreement.

Following sentencing, on January 17, 2018, [Petitioner] filed a direct appeal to the Sixth Circuit Court of Appeals claiming that he received ineffective assistance of counsel. [Petitioner's] specific complaint was that his attorney should not have advised him to agree to the plea agreement and specifically that his attorney was ineffective by advising him to agree that he is a career offender. The Sixth Circuit court advised that they generally do not hear ineffective assistance claims through a direct appeal, because the district court is the better forum to develop the facts necessary to determine the adequacy of representation. The Sixth Circuit then declined to address [Petitioner's] arguments in his direct appeal and affirmed this court's judgment.

(*Id.* at 3-5) (citations omitted).

In short, at the sentencing hearing Petitioner (through his then-counsel) rejected the position, set forth both in his own plea agreement and in the PSR, that he was in fact a career offender. And he invoked this change in position as grounds for withdrawing his plea of guilty (and replacing it with a guilty plea without a plea agreement)[2] in the event that—as ultimately turned out to be the case—the sentencing judge found that Petitioner in fact was a career offender. In other words, at the sentencing hearing Petitioner took the position that: (a) the agreed guideline calculations were wrong because they were based on Petitioner being a career offender when actually, according to Petitioner's new position, he was not; and (b) Petitioner should be able to withdraw his guilty plea if the sentencing judge concluded he was in fact a career offender, even though his plea agreement stated that "the parties understand and agree that the sentence agreed to herein is not dependent upon these [guideline] calculations." (R. 34 at 9).

---

[2] Under Petitioner's proposal, therefore, if the sentencing judge concluded that Petitioner was a career offender, Petitioner would still plead guilty but would not be subject to his agreement to be sentenced to 151 months (subject to the Court's approval). Obviously, Petitioner's intention was not to avoid conviction by guilty plea but rather to seek a sentence lower than 151 months (*i.e.,* lower than the bottom of the advisory guideline range as calculated based on Petitioner being a career offender).

## LEGAL STANDARD

To prevail on a Section 2255 motion, a petitioner must demonstrate that the court imposed the sentence in violation of the Constitution, the court was without jurisdiction to impose such a sentence, the sentence was more than the maximum sentence authorized by law, or the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255 (2018). Section 2255 requires "a hearing on such allegations unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (internal quotation marks omitted); *Ray v. United States*, 721 F.3d 758, 760-61 (6th Cir. 2013); *see also Dagdag v. United States*, No. 3:16-cv-364-TAV, 2019 WL 2330274, at *1 n.1 (E.D. Tenn. May 31, 2019) (internal quotation marks omitted) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) ("[W]here the record conclusively shows that the petitioner is entitled to no relief, a hearing is not required.").

A petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle the petitioner to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008). Even when material facts are in dispute, an evidentiary hearing is unnecessary if the petitioner is conclusively entitled to no relief. *See Amr v. United States*, 280 F. App'x. 480, 485 (6th Cir. 2008). "Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.; accord Arredondo*, 178 F.3d at 782. The decision whether to hold an evidentiary hearing is one committed to the sound discretion of the district court. *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) ("A decision not to hold an evidentiary hearing on a motion for relief under 28 U.S.C. § 2255 is reviewed for abuse of discretion.").

The applicable rules address what the district court may (and must) consider in determining whether to order an evidentiary hearing, where (as here) the motion is not dismissed under Rule 4(b) based on the district court's initial review:

> If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

Rule 8(a), Rules Governing Section 2255 Proceedings. As suggested, Rule 7 permits expansion of the record with additional materials relevant to the motion, such as letters predating the filing of the motion, documents, exhibits, answers under oath to interrogatories, and affidavits. Rule 7(b), Rules Governing Section 2255 Proceedings. In this case, however, no such materials have been submitted to expand the record beyond what is contained in the transcript and records of the underlying case.

## DISCUSSION

Petitioner makes two claims via his Petition. The first is simply not cognizable at this stage. The second clearly is substantively without merit. Accordingly, the Petition will be denied without the need for an evidentiary hearing.

Petitioner's first claim is not presented nearly as clearly as it might be, which to a degree is understandable since Petitioner is proceeding pro se. In the Petition, Petitioner frames it as claiming a denial of the Sixth Amendment right to a fair trial, the Fifth Amendment right to due process, and the Fourteenth Amendment right to equal protection under the law. (Doc. No. 1 at 4). But nowhere does Petitioner develop this argument based on any substantive or procedural facts in this case. Thus, the argument is simply not comprehensible, and thus it is not cognizable in the broad terms in which it is stated here; in particular it is not cognizable as a Sixth, Fifth, or Fourteenth Amendment claim. But in his memorandum of law in support of the Petition, as the

5

Government aptly notes, Petitioner indicates that his first claim actually is a challenge to the sentencing judge's determination that he is a career offender. (Doc. No. 12 at 6 (quoting Doc. No. 2 at 11, 13)). In particular, Petitioner appears to argue essentially that under *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019), he lacked the requisite two convictions to qualify as a career offender under Chapter Four of the United States Sentencing Guidelines, and thus should not have been sentenced based upon a guideline calculation driven by the career offender guidelines. This claim fails for multiple independent reasons, two of which the Court will set forth below before moving on.

First, Petitioner cannot invoke *Havis* to attack the qualifying status of his convictions in the current proceeding, *i.e.*, a collateral attack on his conviction and sentence. *See Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019) (noting that a petitioner "cannot use § 2255—or our decision in *Havis*—to attack collaterally his designation as career offender under the Sentencing Guidelines."); *Chapman v. Terris*, No. 19-11247, 2019 WL 5733708, at *2 (E.D. Mich. Nov. 5, 2019) ("Petitioner is unable to avail himself of the *Havis* decision because it has not been made retroactive to cases on collateral review, including motions to vacate sentence." (citing, i*nter alia*, *Bullard*, 937 F.3d at 657)).

Second, Petitioner waived his right to challenge his sentence based on this kind of claim. In his plea agreement, Petitioner agreed as follows:

> [D]efendant knowingly waives the right to appeal any sentence that includes a term of incarceration of 151 months and a term of supervised release of three years. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241.

(R. 34 at 13). It is true that the parties agreed that "no waiver of the right . . . to challenge the sentence imposed in a[ ] collateral attack, shall apply to a claim of involuntariness, prosecutorial

6

misconduct, or ineffective assistance of counsel." (*Id.*). But Petitioner's *Havis*-based challenge to his classification as a career offender is not the kind of claim falling within any of these exceptions to the waiver. At Petitioner's plea hearing, the Court read all of this language to him verbatim and also established that Petitioner had reviewed this language prior to signing the plea agreement and had no questions about this language. (R. 34 at 10-11). Petitioner's right to appeal the 151-month sentence based on his challenge to career-offender classification thus was knowingly and voluntarily waived. It is well established that a waiver of the right to appeal (or file a collateral attack under Section 2255) will be upheld where it was knowingly and voluntarily waived. *See United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012) ("[A]n appeal waiver is enforceable if the defendant's waiver of his appellate rights was knowing and voluntary.").

For each of these two alternative and independently sufficient reasons, Petitioner's claim that he was erroneously classified as a career offender cannot be entertained by this Court at this stage. This would be true even if the claim had substantive merit—something the Court does not find here to be the case. Accordingly, Petitioner's first claim will be denied.

Petitioner's second claim is that "[t]rial counsel was ineffective by entering into a plea agreement which guaranteed movant's treatment as a career offender when, in fact, there was at least a colorable argument to the contrary." (Doc. No. 1 at 6). Linguistically, this claim is very comprehensibly, even elegantly, stated. Unfortunately for Petitioner, this claim is entirely based on a patently incorrect premise.

Nothing about the plea agreement "guaranteed" Petitioner's treatment as a career offender. Petitioner's plea agreement stated the parties': (a) mutual "understand[ing]"—their "agree[ment]"—that Petitioner was a career offender; and (b) agreement to recommend to the

7

sentencing court a guideline calculation based on the proposition that Petitioner was a career offender (*i.e.*, an offense level of 29, a criminal history category of VI, and a resulting guideline range of 151-188 months). (R. 34 at 9-10 ). But as Petitioner specifically acknowledged in the plea agreement, these guideline calculations were anything but guaranteed, because "the offense level as ultimately determined by the Court (the "court-determined offense level") may be different from [the parties' recommended level, 29], . . . the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from [the parties' recommended level, 29]," and "the court-determined guidelines range may be different from [the parties' recommended range, 151-188 months]." (*Id.* at 10). To make matters even clearer, the plea agreement stated:

> Defendant is aware that the [the parties' recommended guideline range of 151-188], or any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the U.S.S.G. recommendations of the parties, defendant will have no right to withdraw his guilty plea, so long as the Court imposes the sentence agreed upon herein.

(*Id.* at 10-11). The plea agreement was not only *clear* about these matters, it was also *correct* about them. It is indeed the district court's job to determine for itself at sentencing whether the Government has proven, by a preponderance of the evidence, that the defendant qualifies as a career offender. *See, e.g.*, *United States v. Crowell*, 997 F.2d 146, 150 (6th Cir. 1993). And the

8

determination of whether the defendant has each of at least two prior qualifying convictions necessary for career-offender classification is not a discretionary call for the district court; whether a conviction is a qualifying one is subject to *de novo* review on appeal. *United States v. Baker*, 559 F.3d 443, 450 (6th Cir. 2009). In other words, the decision whether a defendant qualifies as a career offender is one that is deemed either right or wrong under the law; the fact that the district court says he qualifies does not make it so, and still less does the fact that the parties say that the defendant qualifies make it so. And tellingly, the United States Sentencing Guidelines Manual makes clear that it is the *sentencing court* that determines the guideline range and that it does so by "applying the provisions of this manual." U.S.S.G. § 1B1.1. That is, the manual tells the court how to calculate the guideline range—and nowhere does the manual indicate that the parties' joint recommendation governs that calculation or is even entitled to any weight.[3]

Moreover, the sentencing judge in this case did not treat the parties' joint recommendation in the plea agreement as determinative of the question. Instead, when notified by Petitioner's then-counsel that Petitioner was now objecting to career-offender status, the sentencing judge did not point to the plea agreement as settling the issue. Instead, he entertained arguments from the two respective sides as to whether Petitioner qualified as a career offender, and only then did he overrule Petitioner's objection to the PSR's assertion that he was a career offender. (Doc. No. 52 at 3-14). The sentencing judge did not even indicate that he ascribed any

---

[3] This principle does not mean, and it is in fact not the case, that the court should not listen impartially to each side's argument as to what the guideline range should be, including each side's position as to whether the defendant is a career offender. This principle also does not mean that the court should not accept a party's (or both parties' joint) position as to what the guideline range should be to the extent such position is valid. Listening to (and accepting to the extent valid) the parties' views about the range is one thing (and appropriate), and deferring to them is quite another (and inappropriate).

9

weight whatsoever to the parties' original joint recommendation that Petitioner be treated as a career offender. (*Id.*).

In short, as Petitioner was specifically advised and specifically acknowledged, the parties' original (joint) position about Petitioner's guideline calculations—including their position on whether the calculations were to be based on the career offender guidelines—was not controlling or binding on the sentencing court and guaranteed nothing. Indeed, there is no reason to believe that the parties' position was even influential upon the Court.

In summary, prior counsel's recommendation of entering into a plea agreement conceding career-offender status did not guarantee, or even materially influence, the sentencing judge's determination that Petitioner was a career offender. Petitioner was found to be a career offender because the sentencing judge himself concluded (consistent with the PSR) that Defendant was a career offender, and not because the plea agreement opined that he was. Thus, prior counsel's performance could not have been deficient for (supposedly) making a recommendation "guaranteeing" career-offender status, and prior counsel's recommendation could not have prejudiced the defense as claimed by Petitioner. Accordingly, with respect to this claim, Petitioner cannot possibly show either prong of a claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("First, the defendant must show that counsel's performance was deficient. . . Second, the defendant must show that the deficient performance prejudiced the defense.").

## CONCLUSION

The record in this case conclusively establishes that Petitioner is not entitled to relief on either of his two claims. Therefore, an evidentiary hearing would serve no purpose, and the Petition will be **DENIED** without an evidentiary hearing.

An appropriate order will be issued.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE